762 F.2d 1010
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
BETTY REVIS, PLAINTIFF-APPELLANT,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES.
 NO. 84-5408
 United States Court of Appeals, Sixth Circuit.
 4/1/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE
 Before: MERRITT, Circuit Judge; PHILLIPS and PECK, Senior Circuit Judges.
 MERRITT, Circuit Judge.
 
 
 1
 Plaintiff Betty Revis appeals from a judgment of the District Court affirming the Secretary's denial of social security disability benefits. We reverse and remand for the award of benefits.
 
 
 2
 Ms. Revis applied for disability benefits on June 12, 1980, alleging that she became disabled on August 4, 1979, due to arthritis and chronic schizophrenia. At the time of her 1983 hearing before the ALJ, Ms. Revis was 48 years old. She has a ninth grade education, and her only work experience has been as a cook in a school cafeteria and a presser in a laundry. The medical evidence consists of records from Ms. Revis' three admissions to Moccasin Bend Mental Health Institute, and reports by psychiatrists and an orthopedic specialist.
 
 
 3
 During 1979-80, Ms. Revis was admitted three times to Moccasin Bend Mental Health Institute, each time suffering from severe symptoms of paranoid schizophrenia. In October, 1979, she was admitted after attacking her husband and daughter, and she stated that she had talked with and had seen the devil. She was diagnosed as an acute paranoid schizophrenic, with auditory and visual hallucinations. Thorazine and Navane were prescribed, and these drugs lessened the severity of her symptoms. A similar episode occurred in March, 1980, when Ms. Revis was admitted to the same hospital after suffering auditory hallucinations and failing to eat for a week. Navane was once again prescribed, and Ms. Revis' condition improved. Her final admission, in November, 1980, was ordered after she threatened to kill her husband and daughter, threw a television set through a window, and rolled a wood stove out of her home and down a hill. The same drug therapy was administered, with a consequent improvement in Ms. Revis' condition.
 
 
 4
 The reports on these admissions note that Ms. Revis' condition can be controlled if she is diligent in taking her medication as prescribed, but the reports also are consistent in stating that Ms. Revis' judgment is impaired and that she has very little insight into her mental problems. Although the Secretary's medical consultant, Dr. Show, opined that her hospitalization history showed that her schizophrenia could be controlled by medication, another consultant, Dr. Hollingsworth, stated that there was no objective data provided in the hospitalization reports which showed that she had improved. In 1981, Dr. Stroud examined Ms. Revis and reported that Ms. Revis continued to suffer hallucinations, was depressed, and had a marked physical tremor. Dr. Stroud's diagnosis was that Ms. Revis was severely depressed, with chronic schizophrenia in only partial remission, and that Ms. Revis was not at the stage where she could consider working. Finally, Dr. Callahan reported in 1982 that Ms. Revis had very low tolerance to stress, had a very short attention span, and was unable to follow directions. He stated that her prognosis was guarded.
 
 
 5
 In addition to these reports on Ms. Revis' psychological problems, the record contains a report by Dr. Price, an orthopedic surgeon, on Ms. Revis' physical condition. He examined Ms. Revis in 1981 and found that her right forearm and hand were severely atrophied, and that this rendered her 'considerably disabled' for any activity that required use of her right arm. Ms. Revis also testified before the ALJ that she could not straighten her fingers and had severe problems gripping objects.
 
 
 6
 The ALJ noted the medical evidence and Ms. Revis' own testimony, but found that her schizophrenia was not disabling because it could be remedied if Ms. Revis stayed on her drug therapy. He also found that Ms. Revis' problems with her right arm did not preclude her from engaging in light activity because she stated that activity helped the pain in her arm. The ALJ concluded that Ms. Revis was capable of engaging in her former work as a laundry presser.
 
 
 7
 Even under our limited standard of review, the ALJ's decision cannot be upheld. There is no evidence for the ALJ's determination that Ms. Revis can return to her former work as a laundry presser. Her testimony is consistent with Dr. Price's conclusion that her right arm is totally disabled. In addition, the ALJ apparently applied the 'grid' to find her employable and not disabled as a result of her mental problems. This was error. The mental problems are 'nonexertional' and hence not covered by the grid.
 
 
 8
 Under regulations promulgated by the Secretary, a social security disability claimant must be found disabled if the claimant's impairments meet or exceed the severity of an impairment listed in Appendix 1 to Subpart P, Chapter III of Title 20 of the Code of Federal Regulations. Section 12.03(A) and (b) of Appendix 1 states that chronic schizophrenia with persistent hallucinations or depression and 'marked restriction of daily activities and construction of interests and seriously impaired ability to relate to other people' qualify a claimant as disabled. Ms. Revis testified that her major activity is a one mile walk once a day. The psychiatrists reported that she is depressed and hallucinates, and the record shows that she cannot control her problems with drug therapy because she lacks the judgment necessary to follow the therapy. On this record, we find that there is no significant evidence that Ms. Revis can engage in any 'substantial gainful activity' under 42 U.S.C. Sec. 423(d).
 
 
 9
 Accordingly, we reverse and remand for the award of disability benefits.